# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,

               Plaintiff,

v.

Seth Grant Huntington,

               Defendant.

Crim. No. 20-145 (ECT/BRT)

**ORDER**

Benjamin Bejar, Esq., Assistant United States Attorneys, counsel for Plaintiff.

Thomas H. Shiah, Esq., Law Offices of Thomas H. Shiah, Ltd., counsel for Defendant.

This matter is before the Court on Defendant Seth Grant Huntington's Motion to Suppress Any Statements Made by Defendant and Motion to Suppress Any Evidence Obtained as a Result of Any Illegal Searches. (Doc. Nos. 16, 17.) The Court held a hearing on the motions on September 9, 2020, at which testimony was heard and exhibits were received. (Doc. Nos. 34, 37.) Defendant filed a Memorandum in Support on October 7, 2020, and the Government filed its Memorandum in Opposition on October 21, 2020. (Doc. Nos. 39, 40.) For the following reasons, this Court recommends that Defendant's motions be denied.

## BACKGROUND

On June 23, 2020, Officer Caleb Tesdahl,[1] Rochester Police Department, applied for and obtained a search warrant for Defendant's residence in Rochester, Minnesota, and for the arrest of Defendant and JLT. (*See* Doc. No. 41, Ex. List, Gov't Ex. 1.) Law enforcement executed the warrant that same day, seizing contraband including narcotics, paraphernalia, cash, and weapons, including an unloaded Walther 9mm pistol, from the residence. (*Id.* at 8–10.) Defendant was subsequently arrested as a felon in possession of a firearm. (Doc. No. 37, 9/9/20 Hr'g Tr. ("Tr.") 14.)

On the afternoon of June 23, 2020, Officer Tesdahl conducted an in-custody interview of Defendant at the Olmsted County Adult Detention Center in the booking area. (*Id.* at 16.) Defendant was in a locked room and was separated from Officer Tesdahl by a plexiglass barrier. (*Id.*) Officer Tesdahl was dressed in plainclothes, his badge was not showing, and he did not have his firearm on his person. (*Id.* at 17.) Officer Tesdahl began the interview by advising Defendant of his *Miranda* rights, and Defendant indicated that he understood them. (Gov't Ex. 2 at 1:10–1:27; Tr. 15–16.) Officer Tesdahl asked Defendant if, with those rights in mind, Defendant wished to speak to him, and Defendant answered that he did. (Gov't Ex. 2 at 1:28–1:33.) Officer Tesdahl's interview with Defendant lasted approximately fifteen minutes. (Tr. 17.) Officer Tesdahl asked

---

[1]     Officer Tesdahl is an Investigator with the Rochester Police Department where he has been employed for nine years and is assigned to the Police Criminal Interdiction Unit and the Southeast Minnesota Violent Crimes Enforcement Team. (Doc. No. 37, Tr. 13.) His primary duties include narcotics, weapons-related, warrant apprehension, and prostitution-related offenses. (*Id.*)

Defendant when the last time he used drugs was, and Defendant replied that it was the day before. (Gov't Ex. 2 at 8:42–8:46.) Officer Tesdahl testified that the interview was "calm and professional," characterized it as a "back-and-forth conversation," and that Defendant did not give any indication that he was under the influence. (Tr. 17.)

On July 6, 2020, Officer Tesdahl met with Defendant again to serve a warrant for a DNA sample to compare against swabs taken from the Walther 9mm pistol seized during the June 23, 2020 search. (*Id.*) Officer Tesdahl served the warrant on Defendant, who was still in custody, at the Olmsted County Adult Detention Center. (*Id.*) Officer Tesdahl did not read Defendant a *Miranda* warning. (*Id.* at 26.) Officer Tesdahl gave Defendant an opportunity to review the warrant and ask questions, and Defendant inquired if the warrant concerned new charges. (*Id.* at 19.) When Officer Tesdahl replied that the warrant concerned the same gun charge, Defendant responded, "I already told you that was mine." (*Id.*) Officer Tesdahl testified that he asked Defendant no questions during this exchange, but that he did execute the warrant by taking the DNA sample as prescribed before departing. (*Id.*)

## ANALYSIS

### A.    Defendant's Motion to Suppress Any Evidence Obtained as a Result of Any Illegal Searches

This Court first turns to Defendant's argument that the search warrant affidavit underlying the June 23, 2020 search of Defendant's residence in Rochester, Minnesota was lacking in probable cause. (Doc. No. 39, Mem. in Supp. 2.) Specifically, Defendant asserts that the affidavit is defective because it relied entirely on statements made by a

3

"concerned citizen" whose identity was not revealed. (*Id.* (citing Doc. No. 30, Def.'s Reply).) Defendant contends that the information provided in the affidavit was insufficient for either Officer Tesdahl or the issuing judge to assess the veracity or reliability of the concerned citizen's statements. (*Id.*) Defendant also asserts that the affidavit does not establish a connection to the residence that was the target of the search warrant. (*Id.*) Finally, Defendant argues that the affidavit's failings were so glaring that no officer could have relied on the warrant issued in good faith, and thus requests an order suppressing all evidence obtained pursuant to that warrant. (*Id.*) For the reasons that follow, this Court disagrees.

i.     **The Search Warrant Was Supported by Probable Cause**

The Fourth Amendment requires probable cause to be shown before a search warrant is authorized. U.S. Const. amend. IV; *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007). When determining whether probable cause exists, a detached and neutral judge must make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998) ("The standard of probable cause for the issuing judge is whether, given the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (quotations omitted)). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232.

Courts should not review search warrants in a hyper-technical fashion. *United States v. Caswell*, 436 F.3d 894, 897 (8th Cir. 2006).

"When . . . the issuing court relies solely on an affidavit to determine whether probable cause exi[sts], only the information found within the four corners of the affidavit may be considered." *United States v. Wells*, 347 F.3d 280, 286 (8th Cir. 2003) (quotations omitted). In reviewing the decision of the issuing court, this Court must ensure that the court "'had a substantial basis for . . . conclud[ing] that probable cause exists.'" *United States v. Oropesa*, 316 F.3d 762, 766 (8th Cir. 2003) (quoting *Gates*, 462 U.S. at 238–39). Because reasonable minds may differ on whether a particular search-warrant affidavit establishes probable cause, the issuing court's determination is accorded great deference. *United States v. Wajda*, 810 F.2d 754, 760 (8th Cir. 1987) (citing *United States v. Leon*, 468 U.S. 897, 914 (1984)).

Here, Defendant's central claim is that the affidavit supporting the June 23, 2020 search warrant relied on statements made by a concerned citizen, but lacked sufficient information to allow either the affiant or the issuing judge to assess the veracity or reliability of the concerned citizen. (Mem. in Supp. 2.) In making this argument, Defendant relies exclusively on caselaw concerning confidential informants. (*Id.* (citing *United States v. Ketzeback*, 358 F.3d 987 (8th Cir. 2004) (citing *Illinois v. Gates*, 462 U.S. 213, 230 (1983)).) However, "a citizen informant is inherently more reliable than the usual police informants who are often mired in some criminal activity themselves." *Edwards v. Cabrera*, 58 F.3d 290, 294 (7th Cir. 1995) (quotations omitted); *accord Gates*, 462 U.S. at 234 (observing that where an "honest citizen comes forward with a

report of criminal activity—which if fabricated would subject him to criminal liability,"
then "rigorous scrutiny of the basis of his knowledge [is] unnecessary") (citation
omitted); *United States v. Ross*, 713 F.2d 389, 393 (8th Cir. 1983) ("We here deal with a
citizen informant with no motive to falsify, rather than a professional informant, with
attendant credibility concerns.").

Moreover, Courts in this District have held that the requirements that apply when
assessing the reliability of a confidential informant "are imposed less, if at all, on
witnesses and mere 'citizen-informants.'" *United States v. Wesseh*, No. CRIM. 06-CR-
284 MJD/SRN, 2007 WL 465392, at *4 (D. Minn. Feb. 8, 2007); *see also United States
v. Kahmann*, No. CIV. 06-373 JRT/SRN, 2007 WL 909733, at *5 (D. Minn. Mar. 23,
2007); *United States v. Dan Thanh Nguyen*, No. CRIM 06-192 PAM/SRN, 2006 WL
3486993, at *7 (D. Minn. Dec. 4, 2006), *aff'd sub nom.*, *United States v. Nguyen*, 526
F.3d 1129 (8th Cir. 2008). This Court finds that Defendant's argument that law
enforcement were under an obligation to corroborate the concerned citizen's statements
in the same manner they would tips provided by confidential informants is unavailing.
This Court therefore turns to the question of whether the information in the affidavit was
sufficient to establish probable cause for the issuance of a search warrant.

When reviewing a search warrant for probable cause, this Court "pay[s] 'great
deference' to the probable cause determinations of the issuing judge" and must limit its
"inquiry to discerning whether the issuing judge had a substantial basis for concluding
that probable cause existed." *United States v. Butler*, 594 F.3d 955, 962 (8th Cir. 2010)
(quoting *Gates*, 462 U.S. at 236). This Court will uphold the issuing judge's

determination of probable cause "as long as he had a 'substantial basis' for concluding that the 'search would uncover evidence of wrongdoing.'" *United States v. Manning*, 361 F. Supp. 3d 839, 844 (D. Minn. 2019) (quoting *United States v. Horn*, 187 F.3d 781, 785 (8th Cir. 1999)). "When the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (citation omitted). "An affidavit establishes probable cause for a warrant if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." *United States v. Mutschelknaus*, 592 F.3d 826, 828 (8th Cir. 2010) (cleaned up). "Determining whether probable cause exists at the time of the search is a 'commonsense, practical question' to be judged from the 'totality-of-the-circumstances.'" *United States v. Donnelly*, 475 F.3d 946, 954 (8th Cir. 2007) (citation omitted).

Here, the affidavit states that at 11:52 p.m. on June 21, 2020, officers were dispatched to Defendant's residence for a report of a gunshot. (Gov't Ex. 1 at 2.) Dispatch had advised that multiple calls were received from residents in the area who had heard the gunshot. (*Id.*) The first caller—the "concerned citizen" whose identity is known to Officer Tesdahl—reported that "Seth" had just fired a shot outside of his apartment, and identified which apartment "Seth" resided in. (*Id.*) Officer Tesdahl confirmed which apartment Defendant resided in with the building owner. (*Id.*) The concerned citizen advised that "Seth's" girlfriend departed in a grey Lexus shortly after the shot was fired.

(*Id.*) While no one answered the door to Defendant's residence, officers were able to identify "Seth" as Defendant, and his girlfriend as JLT. (*Id.*) The concerned citizen later reported that Defendant was walking around the outside of the apartment with a handgun in his waistband. (*Id.*) In addition to the above, the affidavit lists Defendant's prior convictions and outstanding warrant in Iowa, and states that due to his prior convictions, he is not permitted to possess or own a firearm. (*Id.*)

Defendant asserts that there is nothing in the supporting affidavit to connect the facts therein with Defendant's residence, which was the target of the warrant. (Mem. in Supp. 2.) This is incorrect. The concerned citizen not only identified Defendant by name, Defendant's apartment was also identified, and Officer Tesdahl confirmed that information with the building owner. (Gov't Ex. 1 at 2.) Because the warrant affidavit established probable cause that Defendant was a felon in possession of a firearm, "it follows that probable cause existed to search [his] residence, because people 'generally keep [firearms] at home or on their persons.'" *United States v. Cowling*, 648 F.3d 690, 696 (8th Cir. 2011) (quoting *United States v. Steeves*, 525 F.2d 33, 38 (8th Cir. 1975), and citing *United States v. Anderson*, 851 F.2d 727 (4th Cir. 1988) ("It was reasonable for the magistrate to believe that the defendant's gun and the silencer would be found in his residence . . . . even though the affidavit contained no facts that the weapons were located in the defendant's trailer.")).

"Probable cause . . . does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *Donnelly*, 475 F.3d at 954 (citation omitted); *see Manning*, 361 F. Supp. 3d at

845 ("Probable cause exists even when there is less than a 50/50 chance of finding evidence of a crime.") (citation omitted). "Determining whether probable cause exists at the time of the search is a 'commonsense, practical question' to be judged from the 'totality-of-the-circumstances.'" *Donnelly*, 475 F.3d at 954 (quoting *Gates*, 462 U.S. at 230). Here, the totality of the circumstances provided sufficient chance of finding evidence of a crime at Defendant's residence.

### ii.    Good Faith

Even if probable cause did not exist, the search warrant at issue was still facially valid, and therefore the good-faith exception to the exclusionary rule articulated in *United States v. Leon*, 468 U.S. 897 (1984), may apply. "Under the good-faith exception, evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (alteration in original) (quotations omitted). "When assessing the objective [reasonableness] of police officers executing a warrant, [the Court] must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge." *Id.* at 431 (alteration in original) (quotations omitted). This Court finds that even if probable cause did not exist in the underlying affidavit, the warrant itself was still facially valid and a well-trained officer's reliance on it would have been reasonable, and thus the

good-faith exception applies and the evidence seized as a result of the warrant's execution should not be suppressed.[2]

For the above reasons, Defendant's Motion to Suppress Any Evidence Obtained as a Result of Any Illegal Searches should be denied.

## B.    Defendant's Motion to Suppress Any Statements Made by Defendant

This Court next turns to Defendant's Motion to Suppress Any Statements Made by Defendant. (Doc. No. 16.) Defendant argues that the recorded statements made by him to Officer Tesdahl during the June 23, 2020 custodial interview should be suppressed because Officer Tesdahl failed to inquire as to whether Defendant was under the influence of drugs. (Mem. in Supp. 3–4.) Specifically, Defendant argues that because he is a known methamphetamine user, Officer Tesdahl had a duty to ascertain whether he was under the influence and could engage in a free and voluntary waiver of his *Miranda* rights. (*Id.* at 4.) Defendant further argues that the statement he made to Officer Tesdahl on July 6, 2020, must also be suppressed because Defendant was not read his *Miranda* rights and Officer Tesdahl should have known that the discussion he initiated was reasonably likely to elicit an incriminating response. (*Id.*) For the reasons that follow, this Court recommends that Defendant's motion be denied.

---

[2]    Defendant asserts that the officers' reliance on the search warrant at issue could not possibly have been in good faith because the officers failed to corroborate the information provided by the concerned citizen. (Mem. in Supp. 2.) As explained above, however, that argument lacks a basis in the law.

i.       **The June 23, 2020 Interview**

This Court first addresses the question of whether Defendant's waiver of his

*Miranda* rights during the June 23, 2020 recorded custodial interview was valid. "Even

absent the accused's invocation of the right to remain silent, the accused's statement

during a custodial interrogation is inadmissible at trial unless the prosecution can

establish the accused 'in fact knowingly and voluntarily waived [*Miranda*] rights' when

making the statement." *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) (alteration in

original) (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)).

> The waiver inquiry "has two distinct dimensions": waiver must be
> "voluntary in the sense that it was the product of a free and deliberate
> choice rather than intimidation, coercion, or deception," and "made with a
> full awareness of both the nature of the right being abandoned and the
> consequences of the decision to abandon it."

*Berghuis*, 560 U.S. at 382–83 (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986));

*accord United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011). In determining

whether a waiver is valid, courts consider the totality of the circumstances and the

government bears the burden of proving validity by a preponderance of the evidence.

*Vinton*, 631 F.3d at 483; *United States v. Haggard*, 368 F.3d 1020, 1024 (8th Cir. 2004).

"As a general proposition, the law can presume that an individual who, with a full

understanding of his or her rights, acts in a manner inconsistent with their exercise has

made a deliberate choice to relinquish the protections those rights afford." *Berghuis*, 560

U.S. at 385. "Where the [Government] shows that a *Miranda* warning was given and that

it was understood by the accused, an accused's uncoerced statement establishes an

implied waiver of the right to remain silent." *Berghuis*, 560 U.S. at 384; *United States v. Adams*, 820 F.3d 317, 323 (8th Cir. 2016).

Here, Defendant asserts that Officer Tesdahl—who knew Defendant was a methamphetamine user—was required to establish that Defendant was not under the influence of drugs for Defendant's waiver of his *Miranda* rights to be valid. This is incorrect. "While '[s]leeplessness, alcohol use and drug use are relevant to [the] analysis, . . . intoxication and fatigue do not automatically render a confession involuntary.'" *United States v. Miller*, No. 19-CR-322 (JRT/TNL), 2020 WL 5884697, at *7 (D. Minn. Apr. 27, 2020), *report and recommendation adopted*, No. CR 19-322 (JRT/TNL), 2020 WL 3567834 (D. Minn. July 1, 2020) (quoting *Gaddy*, 532 F.3d at 788 (quotation omitted)). "Although [Defendant's] mental acuity is relevant in determining whether his statements were voluntary, it is not dispositive." *Adams*, 820 F.3d at 323–24. Ultimately, "the test is whether these mental impairments caused the defendant's will to be overborne." *Gaddy*, 532 F.3d at 788 (quotation omitted); *see United States v. Annis*, 446 F.3d 852, 856 (8th Cir. 2006) ("This court . . . has declined to adopt a per se rule of involuntariness founded solely on intoxication."). Courts have found *Miranda* waivers valid even where the accused was under the influence of drugs. *See Miller*, 2020 WL 5884697, at *7–8 (finding defendant recovering from surgery and on various medications was capable of making a voluntary statement when he was coherent, rational, and did not appear under the influence); *see also United States v. Casal*, 915 F.2d 1225, 1229 (8th Cir. 1990) (finding defendant who had not slept for five days and under the influence of

12

methamphetamine was capable of making voluntary statement when he did not appear to be intoxicated and talked coherently).

This Court finds no evidence in the record demonstrating that Defendant was under the influence at the time of the June 23, 2020 interview. While Officer Tesdahl never directly asked Defendant whether he was under the influence, he did ask Defendant when the last time he used drugs was, and Defendant replied it was the day before. (Gov't Ex. 2 at 8:42–8:46.) This Court has carefully reviewed the recording of the June 23, 2020 interview, and it appears consistent with Officer Tesdahl's testimony that Defendant gave no indication that he was under the influence during their conversation. (Gov't Ex. 2; Tr. 17, 24.) Defendant appears coherent throughout, aware of the gravity of the situation, and able to answer Officer Tesdahl's questions and follow the conversation. Defendant also poses his own questions to Officer Tesdahl regarding what charges Defendant's girlfriend was facing, why police searched his residence, and what the search warrant was for. (Gov't Ex. 2 at 4:47–5:01; 5:37–5:57.)

This Court also finds that a preponderance of the evidence in the record demonstrates that Defendant's waiver of his *Miranda* rights was voluntary and knowing, and therefore valid. In assessing voluntariness, courts in this circuit look to factors such as "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." *United States v. Vega*, 676 F.3d 708, 718 (8th Cir. 2012) (citation omitted).

Here, there is no evidence in the record that Defendant was coerced by Officer Tesdahl, nor was the interview overlong, and it took place with Defendant separated from

Officer Tesdahl—who was wearing plain clothes and unarmed—separated by plexiglass. (Gov't Ex. 2; Tr. 16 – 17.) Defendant is an adult, and there is no allegation that he suffers from a lack of basic education, lower-than-average intelligence, or any physical ailments. In fact, the interview recording reveals that Defendant was actively engaged in a conversation with Officer Tesdahl, repeatedly attempting to shift blame away from his girlfriend to himself in the hope that she might be released. (Gov't Ex. 2 at 3:05–3:17; 4:30–4:40; 5:38–7:20.) At no time did Defendant seek to end the interview, or request to have counsel present. Accordingly, this Court finds that Defendant's waiver was voluntary.

This Court also finds that Defendant's waiver was knowing. This requires that Defendant "waived his rights with a full awareness of both the nature of the right[s] being abandoned and the consequences of the decision to abandon [them]." *Vinton*, 631 F.3d at 483 (quotation omitted). At the beginning of the interview, and before saying anything else, Officer Tesdahl clearly presented Defendant's *Miranda* rights to him, and Defendant acknowledged that he understood them. (Gov't Ex. 2 at 1:10–1:27; Tr. 15–16.) Officer Tesdahl then asked Defendant whether, knowing his rights, he still wished to speak with Officer Tesdahl, and Defendant answered in the affirmative. (*Id.* at 1:28–1:33.) These exchanges establish that Defendant understood and knowingly waived his *Miranda* rights.

In sum, this Court finds that there is no evidence that Defendant was under the influence of drugs during the June 23, 2020 interview, and it further finds that Defendant's waiver of his *Miranda* rights was knowing and voluntary, and therefore

14

valid. Accordingly, this Court recommends that Defendant's motion to suppress be denied.

### ii.      The July 6, 2020 Statement

Finally, the Court turns to Defendant's argument that his statement to Officer Tesdahl on July 6, 2020, should be suppressed. (Mem. in Supp. 4–5.) Specifically, Defendant asserts that suppression is appropriate because the statement was made without the benefit of a *Miranda* warning, and Officer Tesdahl should have known that the discussion he initiated with Defendant was likely to elicit an incriminating response. (*Id.* at 4.) This Court disagrees.

It is well settled in the Eighth Circuit that "[a] voluntary statement made by a suspect, not in response to interrogation, is not barred [by the Fifth Amendment] and is admissible with or without the giving of *Miranda* warnings." *United States v. Turner*, 157 F.3d 552, 556 (8th Cir. 1998) (quoting *United States v. Hatten*, 68 F.3d 257, 261 (8th Cir. 1995), *cert. denied*, 516 U.S. 1150 (1996)). "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). "When a suspect in custody makes spontaneous statements to an officer, no interrogation can be imputed to the officer." *United States v. Martinez*, No. CRIM. 12-26(2) JRT, 2012 WL 6194909, at *3 (D. Minn. Dec. 12, 2012) (citing *United States v. Hayes*, 120 F.3d 739, 744 (8th Cir. 1997)).

15

Here, the parties do not dispute that Defendant was in custody when he made the July 6, 2020 statement, nor do they dispute that no *Miranda* warning was given or that Officer Tesdahl did not engage in "express questioning" of Defendant. The only question remaining is whether Officer Tesdahl's conversation with Defendant was reasonably likely to elicit an incriminating response. This Court finds that it was not.

The Eight Circuit considered this same question in a similar context in *United States v. Fleck*, 413 F.3d 883 (8th Cir. 2005). There, the Eighth Circuit held that even discussion of a defendant's pending charges may not rise to the level of interrogation. In *Fleck*, the defendants sought to suppress statements made in the presence of a Bureau of Alcohol, Tobacco, Firearms, and Explosives agent who was transporting them from a county jail into federal custody. *Id.* at 889. The defendants asked the agent what they were charged with, and the agent replied that they were charged with being felons in possession of a firearm. *Id.* The defendants then made incriminating statements about the firearms in question. *Id.* The Eighth Circuit held that the defendants' statements:

> were not the product of interrogation, but were volunteered. [Special Agent] Rush testified that the only thing he remembered asking the two was how they liked the food at the Douglas County Jail. It can hardly be said that this was in some way calculated to elicit an incriminating response from either brother.

*Id.* at 893.

Similarly, here, Officer Tesdahl testified that during his brief conversation with Defendant on July 6, 2020, he did not ask Defendant any questions. (Tr. 19–20.) Instead, as in *Fleck*, it was Defendant who asked Officer Tesdahl a question: did the search warrant for a DNA swab concern new charges? (*Id.* at 19.) When Officer Tesdahl replied

that the warrant concerned the existing gun charge, Defendant responded, "I already told you that was mine." (*Id.*) This Court finds that here, as in *Fleck*, it was the question Defendant posed to Officer Tesdahl that led to Defendant's incriminating statement. *Fleck*, 413 F.3d at 893. This Court therefore finds that Defendant's July 6, 2020 statement was volunteered and Officer Tesdahl had no cause to think his statements to Defendant would elicit an incriminating response. Accordingly, Defendant's motion to suppress should be denied.

## RECOMMENDATION

Based on the file, record, and proceedings herein, and for the reasons stated above,

**IT IS HEREBY RECOMMENDED** that:

1.    Defendant's Motion to Suppress Any Statements Made by Defendant (Doc. No. 16) be **DENIED**; and

2.    Defendant's Motion to Suppress Any Evidence Obtained as a Result of Any Illegal Searches (Doc. No. 17) be **DENIED**.

Date:  November 20, 2020                    *s/ Becky R. Thorson*
                                            BECKY R. THORSON
                                            United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b), any party may file and serve specific written objections to this Report and Recommendation by **December 4, 2020**. A party may

respond to those objections by **December 18, 2020**. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 7 days from the date of its filing. If timely objections are filed, this Report will be considered under advisement from the earlier of: (1) 7 days after the objections are filed; or (2) from the date a timely response is filed.