UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | File No. 20-cr-145 (ECT/BRT) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Seth Grant Huntington, | |
| Defendant. | |

---

Benjamin Bejar, United States Attorney's Office, Minneapolis, MN, for Plaintiff United States of America.

Thomas H. Shiah, Law Offices of Thomas H. Shiah, Ltd., Minneapolis, MN, for Defendant Seth Grant Huntington.

---

Defendant Seth Grant Huntington, indicted on one count of being a felon in possession of a firearm, has moved to suppress physical evidence seized during a search of his home, ECF No. 17, and statements that he made to law enforcement while in custody, ECF No. 16. Magistrate Judge Becky R. Thorson issued a Report and Recommendation ("R&R") in which she concluded that both motions should be denied. R&R at 17 [ECF No. 42]. Huntington now objects to the R&R in full, and its conclusions will be reviewed de novo. Def.'s Objs. [ECF No. 43]; *see* 28 U.S.C. § 636(b)(1); Local Rule 72.2(b)(3). Based on that review, the R&R will be accepted.

I

First, Huntington objects to Magistrate Judge Thorson's conclusion that a search warrant for his residence was supported by probable cause. Huntington contends that the

warrant affidavit lacked probable cause to believe evidence would be found in his residence because it did not establish (1) the veracity and reliability of statements made by a concerned citizen or (2) a nexus between his residence and the evidence sought. Def.'s Objs. at 2. Huntington also claims the affidavit was so lacking in probable cause that the good-faith exception cannot apply. *Id.* at 2–3.

The warrant authorizing a search of Huntington's apartment resulted from an application and affidavit submitted by Officer Caleb Tesdahl, an investigator with the Rochester Police Department. *See* Gov't Suppression Hr'g Ex. 1 ("Gov't Ex. 1"); ECF No. 41. According to the affidavit, officers were dispatched to Huntington's apartment on the night of June 21, 2020, after multiple calls by nearby residents who reported hearing a single gunshot. Gov't Ex. 1 at 2. The affidavit identifies the first caller as a "Concerned Citizen" whose identity was known by Officer Tesdahl. The concerned citizen relayed that "'Seth' in apartment D had just fired a shot outside the apartment," and that Seth's girlfriend left in a gray Lexus shortly after the shot was fired. *Id.* Officers arrived "and attempted contact with the occupant of apartment D[,] but no one answered the door." *Id.* Finding no physical evidence of a shooting, they eventually left the area. Officers discovered a "listed address" for Defendant Seth Huntington that matched the apartment building, though it placed him in apartment C, rather than apartment D. *Id.* Officer Tesdahl spoke with the owner of the apartment building, who confirmed that "Seth recently moved from apartment C to apartment D." *Id.* Officers concluded that "Seth" was Defendant Seth Huntington and his girlfriend was J.L.T. *Id.* The concerned citizen later reported that Seth was walking outside of the apartment with a handgun in his waistband. According to the

concerned citizen, "Seth ha[d] made comments in the past that he [was] not going back to prison and [was] going to shoot it out with the police." *Id.* The affidavit listed Huntington's prior criminal convictions and an active warrant in Iowa. *See id.* The affidavit stated that, due to his criminal history, Huntington could not lawfully possess a firearm. *Id.*

Probable cause exists when a supporting affidavit "sets forth sufficient facts to establish 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Darr*, 661 F.3d 375, 380 (8th Cir. 2011) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The issuing judge "may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant[.]" *United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000) (citation omitted). An issuing judge's probable cause determination is paid "great deference" and will not be disturbed if there was a "substantial basis for concluding that probable cause existed." *United States v. Butler*, 594 F.3d 955, 962 (8th Cir. 2010) (internal quotation marks and citation omitted).

Magistrate Judge Thorson correctly found that the affidavit provided a substantial basis to find probable cause. R&R at 4–9. Huntington argues the affidavit did not contain enough information about the concerned citizen for the issuing judge "to assess the veracity and reliability of the [citizen's] statements." Def.'s Objs. at 2. It is true that "[w]hen the affidavit is based substantially on information provided by an informant, evidence of the informant's reliability, veracity, and basis of knowledge is highly relevant to the probable cause determination." *United States v. Ketzeback*, 358 F.3d 987, 991 (8th Cir. 2004). Yet

3

these factors are not rigidly applied, and they are more easily shown when information comes from a "citizen informant" who, unlike many criminal informants, ordinarily "ha[s] no reason to exaggerate or falsify the information" she gives to law enforcement. *United States v. Ross*, 713 F.2d 389, 393 (8th Cir. 1983). A concerned citizen's first-hand information is ordinarily presumed credible. *See* 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.4(a) (6th ed. Sept. 2020 Update). Here, Huntington does not argue the concerned citizen had an ulterior motive, and the affidavit does not suggest as much. Also, the concerned citizen is more reliable because his or her identity was known to Officer Tesdahl. *United States v. Stevens*, 530 F.3d 714, 718–19 (8th Cir. 2008); *United States v. Evans*, No. 15-cr-16 (ADM/LIB), 2015 WL 2070969, at *10 (D. Minn. May 1, 2015). "[A] known informant . . . can be held responsible if her allegations turn out to be fabricated." *Florida v. J.L.*, 529 U.S. 266, 270 (2000). Finally, the affidavit cites independent sources that corroborate the concerned citizen's statements. For one, the concerned citizen was not alone in reporting the gunshot. "Dispatch . . . received multiple calls from residents in the area hearing a single gunshot." Gov't Ex. 1 at 2; *see United States v. Anderson*, 339 F.3d 720, 723–24 (8th Cir. 2003). Second, the concerned citizen reported that a person named Seth lived in apartment D. Officers verified this detail by checking a "listed address" and following up with the building owner. Gov't Ex. 1 at 2. Last, the concerned citizen demonstrated some level of familiarity with Huntington by reporting that Huntington "made comments in the past that he is not going back to prison." *Id.* This report tracks with Huntington's long conviction history, which is also contained in the affidavit. *See id.* The concerned citizen's first-hand knowledge of

4

independently corroborated facts about the incident and Huntington bolsters the citizen's credibility. *Stevens*, 530 F.3d at 719; *Ketzeback*, 358 F.3d at 992; *United States v. Murphy*, 69 F.3d 237, 240–41 (8th Cir. 1995).

Second, Huntington objects to the R&R on the basis that the warrant affidavit did not establish a connection to his residence. Def.'s Objs. at 2. Probable cause requires "evidence of a nexus between the contraband and the place to be searched[.]" *United States v. Alexander*, 574 F.3d 484, 490 (8th Cir. 2009) (citation omitted). As Magistrate Judge Thorson pointed out, people "generally keep firearms at home or on their persons." *United States v. Cowling*, 648 F.3d 690, 696 (8th Cir. 2011) (citations and alteration omitted). Thus, when the government has shown probable cause that a defendant illegally possessed a firearm, that showing naturally extends to his residence. *Id.* Here, the issuing judge had a substantial basis to find probable cause that Huntington's criminal history prohibited him from lawfully possessing a firearm, that Huntington possessed a firearm, and that Huntington lived in the place to be searched. *See* Gov't Ex. 1 at 2. Thus, probable cause existed to search Huntington's residence.

Huntington's final probable-cause objection is to Magistrate Judge Thorson's conclusion that the good-faith exception would apply if probable cause were not shown. Def.'s Objs. at 2–3; R&R at 9–10. "Under the good-faith exception, evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008). Here, having already determined that probable cause existed to issue the warrant, there is no need to decide whether the good-faith

exception applies. The R&R's probable-cause conclusions will be accepted, and Huntington's motion to suppress evidence obtained during the search of his residence will be denied.

II

Second, Huntington objects to Magistrate Judge Thorson's conclusion that his *Miranda* rights were not violated during two custodial interactions with Officer Tesdahl. Huntington contends that (1) his Mirandized statements during a June 23, 2020 interview were involuntary and must be suppressed because he was under the influence of methamphetamine; and (2) his non-Mirandized statements on July 6, 2020, must be suppressed because Officer Tesdahl initiated a discussion that was reasonably likely to elicit an incriminating response. Def.'s Objs. at 3.

A

The first interview occurred the afternoon of June 23, 2020, "within a couple hours" of Huntington's arrest earlier that day. Suppression Hr'g Tr. at 14:15–20, 16:14–17, 23:13–18 [ECF No. 37]. The interview took place in the booking area of the Olmsted County Adult Detention Center, where Huntington was placed in a locked room and separated from the interviewer, Officer Tesdahl, by a plexiglass window. *Id.* at 16:14–25. Officer Tesdahl was in plain clothes and was not carrying a firearm. *Id.* at 17:17–25. The Government submitted an audio recording of this interview as evidence at the suppression hearing. Gov't Suppression Hr'g Ex. 2 ("Gov't Ex. 2"); ECF No. 41. In the recording, Officer Tesdahl begins by reading Huntington his *Miranda* rights. Huntington confirms that he understands his *Miranda* rights and, when asked if he still wishes to speak with

Officer Tesdahl, answers that he does. Gov't Ex. 2 at 1:10–34. As Magistrate Judge Thorson observed in the R&R, Huntington then "appears coherent throughout [the interview], aware of the gravity of the situation, and able to answer Officer Tesdahl's questions and follow the conversation." R&R at 13. Huntington "poses his own questions to Officer Tesdahl regarding what charges [J.L.T.] was facing, why police searched his residence, and what the search warrant was for." *Id.*; Gov't Ex. 2 at 4:30–5:01, 5:37–5:57. Before he admits to possessing the firearm, Huntington also inquires whether the recording device may be turned off. *Id.* at 6:00–12. Near the end of the interview, the discussion shifts to Huntington's history of drug use. When Officer Tesdahl asks when Huntington last used, he responds "yesterday." *Id.* at 8:42–47. Officer Tesdahl never asks Huntington if he was still under the influence of drugs or feeling the effects of his last use; nor does Huntington suggest that he was.

A *Miranda* waiver is only effective when a defendant acts "voluntarily, knowingly, and intelligently." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "The waiver inquiry 'has two distinct dimensions': waiver must be 'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception,' and 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Berghuis v. Thompkins*, 560 U.S. 370, 382–83 (2010) (citation omitted). "As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Id.* at 385. Still, "[t]he government has the burden of proving the validity of the *Miranda*

waiver by a preponderance of the evidence." *United States v. Haggard*, 368 F.3d 1020, 1024 (8th Cir. 2004).

Magistrate Judge Thorson correctly concluded that Huntington made a valid waiver of his *Miranda* rights during the June 23, 2020 interview. R&R at 13–15. Huntington's sole objection is that he was "under the influence of methamphetamine" when he was questioned, so his *Miranda* waiver was not constitutionally effective. Def.'s Objs. at 3. In his suppression briefing, Huntington points out that Officer Tesdahl was aware of his past drug use but "made no attempt to determine whether he could engage in a free and voluntary waiver[.]" ECF No. 39 at 4. Huntington also argues he "had only been in the jail for a few hours and had not had time to fully detoxify from whatever he had ingested prior to his arrest." *Id.* Yet total detoxification is not the threshold for an effective waiver. "Sleeplessness, alcohol use and drug use are relevant" to the validity of a *Miranda* waiver, but "[i]ntoxication and fatigue do not automatically render a confession involuntary." *United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir. 2008) (quoting *United States v. Casal*, 915 F.2d 1225, 1229 (8th Cir. 1990)). The correct test is whether a defendant's mental impairments caused his will to be "overborne." *Id.*

Here, a preponderance of the evidence shows that Huntington's claimed methamphetamine use did not cause his will to be overborne. For one, Huntington never claimed to be under the influence of drugs or to be feeling unwell during the interview. The interview took place in the afternoon and, when Officer Tesdahl asked when Huntington last used drugs, he responded that it had been since "yesterday." Supp. Hr'g Tr. at 14:15–20; Gov't Ex. 2 at 8:42–47. Most important, the audio recording supports

8

Officer Tesdahl's testimony that Huntington was coherent and exhibited no signs of intoxication. *See* Suppression Hr'g Tr. at 26:21–27:19. Huntington speaks clearly and responsively during the interview. He demonstrates alertness by making numerous denials, asking questions that gauge what law enforcement knows, attempting to avert blame from J.L.T., and even asking whether the recording device may be turned off before making an admission. Gov't Ex. 2 at 4:30–5:01, 5:37–7:07, 9:21–59, 12:55–13:56. The interview is brief—less than fifteen minutes—and Officer Tesdahl is courteous throughout. Taken together, this evidence shows Huntington made a knowing, voluntary, and intelligent waiver of his *Miranda* rights. *See United States v. Daniels*, 775 F.3d 1001, 1004–05 (8th Cir. 2014) (finding "no outward manifestations that would suggest [defendant's] Miranda waiver or subsequent admissions were involuntary" despite alleged intoxication eight hours prior); *Gaddy*, 532 F.3d at 786, 788 (claimed intoxication and lack of sleep did not outweigh testimony that defendant was "awake and coherent" for *Miranda* waiver); *Casal*, 915 F.2d at 1229 (same); *United States v. Pape*, 917 F. Supp. 2d 888, 896–98 (D. Minn. 2013) (same). Thus, Huntington's statements during the June 23, 2020 interview will not be suppressed.

B

Huntington also seeks to suppress non-Mirandized statements he made to Officer Tesdahl on July 6, 2020. This interaction also occurred while Huntington was in custody at the Olmsted County Adult Detention Center. This time, Officer Tesdahl was serving and executing a warrant for a sample of Huntington's DNA, which would be compared with swabs taken from the firearm seized during the search of his apartment. Suppression

Hr'g Tr. at 19:4–13. Law enforcement did not record this interaction, *id.* at 19:14–16, though Officer Tesdahl described it in his testimony at the suppression hearing. According to Officer Tesdahl, he first handed Huntington a copy of the warrant. *Id.* at 27:20–24. Huntington reviewed the warrant and asked whether it related to any new charges. Officer Tesdahl answered that it did not and explained that the search warrant related to "the same gun charge" (*i.e.*, the pending charge for the firearm seized on June 23, 2020). *Id.* at 19:20–20:7. Huntington then responded, "I already told you that was mine." *Id.* at 20:8–10. Officer Tesdahl then executed the warrant. Officer Tesdahl testified that neither he nor Huntington spoke again during the July 6 interaction. *Id.* at 20:11–19, 27:25–28:10.

*Miranda* governs the admissibility of statements made by a criminal defendant who is interrogated while in police custody. *Dickerson v. United States*, 530 U.S. 428, 432 (2000). The parties agree that Officer Tesdahl did not Mirandize Huntington and that Huntington was in custody. Thus, whether *Miranda* was triggered turns on whether Huntington was "interrogated." Interrogation includes "express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980). Huntington does not assert that Officer Tesdahl asked him questions on July 6. Rather, Huntington argues *Miranda* was triggered when Officer Tesdahl initiated a discussion that he should have known was "reasonably likely to elicit an incriminating response." Def.'s Objs. at 3 (quoting *Innis*, 446 U.S. at 301). Huntington doesn't specify exactly which act or statement "initiated" the discussion—was it the mere act of serving and executing the search warrant, Officer Tesdahl's verbal response to Huntington's question about charges, or some totality of the circumstances? Regardless, the evidence here shows an interrogation did not occur.

10

First, Officer Tesdahl's serving and executing a search warrant for DNA, without more, was not functionally equivalent to interrogating Huntington. Merely serving a copy of the warrant more closely resembles an act "normally attendant to arrest and custody" than it does interrogation, *Innis*, 446 U.S. at 301, and was a necessary step for executing the warrant. Fed. R. Crim. P. 41(f)(1)(C); *United States v. Gaston*, 357 F.3d 77, 82 (D.C. Cir. 2004); *see also Pennsylvania v. Muniz*, 496 U.S. 582, 601–02 (1990) (finding requests for "biographical data necessary to complete booking or pretrial services" were not interrogative because they were "reasonably related to the police's administrative concerns"); *South Dakota v. Neville*, 459 U.S. 553, 564 n.15 (1983) (stating that inquiring whether a suspected drunk driver will take a blood-alcohol test, "similar to a police request to submit to fingerprinting or photography," was not an interrogation). Of course, whether an interrogation occurred is fact intensive. There are circumstances where an officer's actions or statements while executing a warrant, such as asking a defendant questions or steering conversation to the underlying offense, may become reasonably likely to elicit an incriminating response. *See United States v. Tapia-Rodriguez*, 968 F.3d 891, 895–96 (8th Cir. 2020); *United States v. Tail*, 459 F.3d 854, 857–58 (8th Cir. 2006). But those actions or statements were not present here. Officer Tesdahl testified—and Huntington has not disputed—that the only words he spoke were to answer Huntington's question about "new charges"; Officer Tesdahl clarified that the warrant concerned "the same gun charge." Suppression Hr'g Tr. at 19:23–20:16. "A 'law enforcement officer's mere description of the evidence and of potential charges against a suspect, in direct response to the suspect's importuning, hardly can be classified as interrogatory,'" and "an inculpatory statement is

11

not considered the product of custodial interrogation merely because it is made after the suspect has been told the charges against him." *United States v. Wipf*, 397 F.3d 677, 685 (8th Cir. 2005) (citations omitted). As in *United States v. Fleck*, here "it was [Huntington's] initiation of questioning of [Officer Tesdahl] that led to [his] incriminating statements." 413 F.3d 883, 893 (8th Cir. 2005); *see also United States v. Orr*, 636 F.3d 944, 954 (8th Cir. 2011) (holding an officer's assurance that he possessed a valid arrest warrant in response to arrestee's challenge was "precisely the type of benign, informative comment" that does not trigger *Miranda*). Thus, Huntington was not interrogated, and his July 6, 2020 statements will not be suppressed.

## ORDER

Therefore, based on all the files, records, and proceedings in the above-captioned matter, **IT IS ORDERED THAT**:

1. Defendant Seth Grant Huntington's Objections to the Report and Recommendation [ECF No. 43] are **OVERRULED**.

2. The Report and Recommendation [ECF No. 42] is **ACCEPTED**.

3. The Motion to Suppress Any Statements Made by Defendant [ECF No. 16] is **DENIED**.

4. The Motion to Suppress any Evidence Obtained as a Result of any Illegal Searches [ECF No. 17] is **DENIED**.

Date: January 19, 2021    s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court