UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 20-145 (ECT/BRT)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) PLEA AGREEMENT AND ) SENTENCING STIPULATIONS |
| SETH GRANT HUNTINGTON, | ) ) |
| Defendant. | ) |

The United States of America and the defendant, SETH GRANT HUNTINGTON, agree to resolve this case on the following terms and conditions. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. It does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges**. The defendant agrees to plead guilty to Count 1 of the Superseding Indictment, charging the defendant with being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1).

2. **Factual Basis**. The defendant stipulates and agrees to the following facts and further agrees that, were this matter to go to trial, the United States would prove the following facts beyond a reasonable doubt:

    a. On June 21, 2020, Rochester Police ("RPD") responded to the defendant's apartment residence in Rochester, Minnesota, on a report of a shots-fired call. Police learned from a concerned citizen that the defendant was outside his apartment residence arguing with a female just prior to the gunshot being fired.

    b. On June 23, 2020, RPD investigators saw the defendant and the female leave the defendant's residence in what was determined to be a stolen

vehicle. Investigators followed the vehicle to a local gas station/convenience store, and arrested both the defendant and the female in the parking lot after they exited the vehicle. Both had active felony drug warrants from another jurisdiction.

c. Investigators obtained and executed a search warrant at the defendant's residence the same day. On the bed of the master bedroom, Investigators recovered a loaded Walther, model PPS, 9-millimeter-caliber semiautomatic pistol, bearing serial number AT8601 ("the firearm.")

d. During a recorded post-Miranda interview, the defendant admitted that he knew he was a convicted felon and prohibited from possessing a firearm. He also admitted that the firearm found inside of his residence belonged to him and that nothing inside the apartment residence belonged to the female.

e. An Investigator executed a DNA warrant to obtain the defendant's DNA sample a few days after his arrest, and the defendant asked if it was for a new charge. When the Investigator told the defendant that it was for the gun possession charge, the defendant stated words to the effect of, "I already told you it was mine."

f. The BCA Lab conducted forensic DNA analysis on the firearm and determined that the major male DNA profile found on the firearm matched the defendant's DNA profile and would not be expected to occur more than once among unrelated individuals in the world's population.

g. The firearm referenced above is a "firearm" as defined by federal law under 18 U.S.C. § 921(a)(3), and was not manufactured in the State of Minnesota. The firearm therefore necessarily traveled in interstate or foreign commerce before being in the defendant's possession in Minnesota on or about June 23, 2020.

h. The defendant agrees and admits that before June 23, 2020, he had been convicted of certain felony crimes, as listed in Count 1 of the Indictment, each punishable by more than one year in prison, that he knew he had previously been convicted of at least one crime punishable by more than one year in prison, that he knowingly and voluntarily possessed the firearm on June 23, 2020, and that he knew he was prohibited from possessing any firearm on account of his prior felony convictions.

3. **Waiver of Pretrial Motions**. The defendant understands and agrees that he has certain rights to file pretrial motions in this case. As part of this plea agreement, and based upon the concessions of the United States contained herein, the defendant

knowingly, willingly and voluntarily agrees to withdraw any pretrial motions he may have already filed and to give up the right to file any additional pretrial motions.

4.   **Statutory Penalties**.   The United States believes that the defendant is subject to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), and that Count 1 of the Indictment, therefore, carries the following statutory penalties:

   a. a maximum term of life imprisonment;

   b. a mandatory-minimum term of not less than 15 years' imprisonment. (18 U.S.C. §§ 922(g)(1), 924(a)(2) and 924(e)(1));

   c. a supervised-release term of not more than 5 years. (18 U.S.C. § 3583(b)(1));

   d. a fine of up to $250,000. (18 U.S.C. §§ 924(a)(2) and 3571(b)(3)); and

   e. a mandatory special assessment of $100. (18 U.S.C. § 3013(a)(2)(A)).

The defendant, however, reserves the right to argue that he is not subject to the ACCA and to challenge, at sentencing and on appeal, the PSR's designation of any prior felony conviction as a predicate felony under the ACCA. The parties agree that whether the defendant does or does not qualify as an Armed Career Criminal will be determined by the Court in its discretion at sentencing, and that regardless of the Court's decision, neither party may withdraw from the Plea Agreement on that basis. If the Court finds that the defendant is not subject to the ACCA, the parties agree that the applicable statutory maximum term of imprisonment is 120 months, 18 U.S.C. § 922(g)(1) and 924(a)(2), (a Class C felony), and that the maximum supervised release term is 3 years, 18 U.S.C. § 3583(b).

5. **Guidelines Calculations**. The parties acknowledge the defendant will be sentenced in accordance with Title 18, Chapter 227 (18 U.S.C. §§ 3551 – 3586) and with reference to the advisory United States Sentencing Guidelines. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following Guidelines calculations:

 a. **Base Offense Level**. The United States believes that because the defendant is subject to an enhanced sentence under the ACCA, the base offense level is 33. USSG § 4B1.4(b)(3)(B).

 If the Court determines that the defendant is not subject to the ACCA, then the parties agree that the base offense level is 24, because the defendant committed the instant offense after sustaining two felony convictions of a crime of violence, namely, a 2006 and 2018 third-degree assault. USSG § 2K2.1(a)(2).

 b. **Specific Offense Characteristics**. The parties agree that no specific offense characteristics or adjustments apply.

 c. **Chapter Three Adjustments**. The parties agree that no Chapter Three adjustments apply other than as provided for in Paragraph 5.d. below for acceptance of responsibility.

 d. **Acceptance of Responsibility**. The parties agree that if and only if the defendant (1) provides full, complete and truthful disclosures to the United States Probation and Pretrial Service Office, including providing complete, accurate and truthful financial information; (2) testifies truthfully during the change of plea and sentencing hearings; (3) complies with this agreement; and (4) undertakes no act inconsistent with acceptance of responsibility before the time of sentencing, the United States will recommend that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a), and will move for an additional one-level reduction under § 3E1.1(b). The defendant understands that any reduction for acceptance of responsibility shall be determined by the Court in its discretion.

If the Court determines that the defendant is subject to the ACCA, then after applying a three-level reduction for acceptance of responsibility, the defendant's **total offense level is 30** (33-3). If the Court determines that the defendant is not subject to the ACCA, then after applying a three-level reduction for acceptance of responsibility, the defendant's **total offense level is 21** (24-3).

e. **Criminal History Category**. Based on the information currently available, the parties believe the defendant has a criminal history category of **VI**. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The final determination of the defendant's criminal history category will not provide either party a basis to withdraw from the plea agreement.

f. **Guidelines Range**. If the total offense level is 30, and the criminal history category is VI, the advisory Guidelines range is 168 to 210 months' imprisonment, with a statutory mandatory-minimum sentence of 180 months' imprisonment, or an effective Guidelines range of 180 to 210 months. USSG § 5G1.1.

If the total offense level is 21, and the criminal history category is VI, the advisory Guidelines range is 77 to 96 months' imprisonment, with a statutory maximum sentence of 120 months' imprisonment. USSG § 5G1.1

g. **Fine Range**. If the total offense level is 30, the applicable fine range is $30,000 to $250,000. If the total offense level is 21, the applicable fine range is $15,000 to $150,000. USSG § 5E1.2(c)(3); 18 U.S.C. § 3571(b)(3).

h. **Special Assessments**. The Guidelines require payment of a special assessment in the amount of $100.00. USSG § 5E1.3. The defendant understands and agrees that this special assessment is due and payable at the time of sentencing.

i. **Supervised Release**. If the defendant is subject to the ACCA, the Guidelines require a supervised release term of at least 2 years but not more than 5 years. USSG § 5D1.2(a)(1). If the defendant is not subject to the ACCA, the Guidelines provide for a supervised release term of at least 1 year but not more than 3 years. Id. § 5D1.2(a)(2).

6. **Discretion of the Court**. The foregoing stipulations bind the parties but not the Court. The parties understand the Sentencing Guidelines are advisory and their

application is a matter falling solely within the Court's discretion. The Court may make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines (but not below the mandatory-minimum sentence of 180 months). If the Court determines the applicable Guidelines calculations or the defendant's criminal history category are different from that stated above, the parties may not withdraw from this Plea Agreement, and the defendant will be sentenced pursuant to the Court's determinations.

7. **Sentencing Recommendation and Departures**. The parties reserve the right to make departure motions and to oppose any such motions made by the opposing party. The parties also reserve the right to argue for a sentence outside the applicable advisory Guidelines range, subject to any mandatory minimum sentence. If the Court determines that the defendant is subject to the ACCA, both parties agree that they will advocate for a sentence of 180 months, the mandatory-minimum sentence. Both parties acknowledge and agree, however, that in the event that a retroactively applicable change in the law regarding the ACCA is enacted by Congress, found by the Supreme Court, and/or adopted by the United States Sentencing Commission, nothing in this plea agreement will preclude the defendant from pursuing any applicable remedy to modify his sentence.

8. **Revocation of Supervised Release**. The defendant understands that if the defendant were to violate any condition of supervised release, the defendant could be sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

9. **Forfeitures**. The defendant agrees to forfeit the Walther, model PPS, 9-millimeter-caliber semiautomatic pistol, bearing serial number AT8601, and all ammunition, magazines, and others accessories seized therewith, to the United States, pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c). The defendant agrees that the United States may, at its option, forfeit such property through civil, criminal or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest he may have in the property. The defendant also consents to the destruction of the property described above and waives all statutory and constitutional defenses to their forfeiture.

10. **Waiver of Freedom of Information Act and Privacy Act**. In exchange for the concessions of the United States made herein, the defendant agrees to waive all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

11. **Waiver of Postconviction Petition**. The defendant understands his rights to file a postconviction petition contesting his conviction or sentence and, except for a claim of ineffective assistance of counsel and/or the specific exception listed in Paragraph 7 above, the defendant knowingly and voluntarily waives all rights to contest the defendant's conviction or sentence in any postconviction proceeding, including one pursuant to Title 28, United States Code, Section 2255. The defendant has discussed these rights with the defendant's counsel and understands the rights being waived.

12. **Complete Agreement**.  This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant.

Dated: MAY 18, 2021

W. ANDERS FOLK
Acting United States Attorney

BY: BENJAMIN BEJAR
Assistant United States Attorney
Attorney ID No. 351131

Dated: 5-18-21

SETH GRANT HUNTINGTON
Defendant

Dated: 5/18/21

THOMAS H. SHIAH, ESQ.
Attorney ID No. 100365
Attorney for Defendant